**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **PATRICIA WADE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **PATRICK R. DONAHOE** | : | **NO. 11-3795** |

------------------------------------------------

| | | |
|---|---|---|
| **PATRICIA WADE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **PATRICK R. DONAHOE** | : | **NO. 11-4584** |

## MEMORANDUM OPINION

**SAVAGE, J.**                                                                                      **September 4, 2012**

*Pro se* plaintiff Patricia Wade has filed two actions alleging various claims of discrimination and retaliation arising out of her employment with the United States Postal Service ("USPS").[1]  In her first complaint, she alleges that the USPS violated Title VII by subjecting her to a campaign of harassment aimed at impeding her entitlement to Federal Employment Compensation Act ("FECA") benefits in retaliation for her 2003 Equal Employment Opportunity Commission ("EEOC") activity.[2]  In the second complaint, she claims that during its National Reassessment Program ("NRP"), the USPS violated Title VII by subjecting her to retaliation and the Americans with Disabilities Act ("ADA") and

---

[1] Title VII provides that the "head of the department, agency, or unit" that allegedly discriminated against a federal employee "shall be the defendant." 42 U.S.C. § 2000e-16(c) (2003). Wade properly named Patrick R. Donahoe, the Postmaster General, as the defendant.

[2] Compl. No. 11-3795. We shall use the term "FECA complaint" to describe Wade's claims in this complaint.

According to Wade, she returned to work in 2003 after a successful lawsuit against the USPS for "sexual harassment and physical assault." Compl. No. 11-3795, at 1.

Rehabilitation Act by discriminating against her based on a disability.[3]  Wade appears to make additional claims under several other statutes and a host of regulations.[4]

The USPS moves to dismiss Wade's Title VII claims in her FECA complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  It argues that we lack jurisdiction because the Department of Labor ("DOL") has exclusive authority to administer FECA and to decide all questions arising under the statute.  Alternatively, it contends that Wade has failed to demonstrate any causal connection between the 2003 EEOC activity she references in her complaints and the USPS's alleged harassment beginning in October 2010 in the form of refusing to process and submit paperwork required for her to support her claim for FECA benefits.

As to Wade's NRP complaint, the USPS argues that she has not exhausted her disability discrimination claims because the EEOC has held them in abeyance pending resolution of a class action challenging the NRP.[5]  Seeking dismissal or alternatively summary judgment on the Title VII claim that her treatment during the NRP was in retaliation for her EEOC activity, the USPS argues Wade has presented no facts demonstrating a causal relationship between that activity and her participation in the NRP.

After viewing the allegations in the complaints as true and in the light most favorable to Wade, we shall grant the USPS's motion as to the Title VII claims for failure to plead facts supporting an inference of causation.  Wade has presented no facts showing a pattern of antagonistic behavior in the seven intervening years between her EEOC activity

---

[3] Compl. No. 11-4584.  The term "NRP complaint" will refer to this second complaint.

[4] On Wade's motion, we consolidated the two complaints under Civil Action No. 11-3795.

[5] The USPS concedes that Wade has exhausted her other claims.

and the alleged campaign of retaliation.   Nor do Wade's allegations, viewed in their entirety, support an inference of a causal nexus between her protected activity and the alleged campaign of harassment.   We shall also dismiss Wade's disability discrimination claims in her NRP complaint because they have been subsumed into a binding class action pending before the EEOC.   Therefore, we shall grant the motions to dismiss.

## Background[6]

### *FECA Complaint*

Wade suffered on-the-job injuries to her shoulders on February 18, 2006.   After returning from right shoulder surgery, she worked limited duty for four years.   In March of 2009, Wade aggravated the injury to her left shoulder while at work, requiring rotator cuff surgery.

To ensure receipt of workers' compensation benefits under FECA while out of work for surgery, Wade attempted to complete a leave slip.[7]   Although the exact process is not clear from the pleadings, it appears that her direct supervisor had to sign the form, which is forwarded with any necessary paperwork to the DOL.   The DOL then determines entitlement to FECA benefits.

Wade alleges that several USPS managers and supervisors harassed her by making it difficult for her to complete her leave slip, and then not sending the necessary paperwork to the DOL.   As a result, she claims she did not receive some of her FECA

---

[6] The recitation of the facts is based on Wade's allegations in the two complaints, which we accept as true and from which we draw all inferences in her favor.

[7] FECA provides a comprehensive workers' compensation scheme for federal employees. *Nobel v. United States*, 216 F.3d 1229, 1234 (11th Cir. 2000).

3

benefits payments.  According to Wade, after a supervisor, Martha Jenkins, refused to sign the form, manager Cheryl Talmage told Wade that she would help her with her paperwork, but failed to do so.  Wade convinced manager Devola Sutton to sign her leave slip. Another manager, Mitchell Petty, immediately destroyed it.  Petty told Sutton that Wade was not her concern, apparently because Sutton was not Wade's direct supervisor.[8] Although Petty offered to take her to her direct supervisor, Wade refused to go.  Wade ultimately delayed her surgery due to her difficulty in finding a manager or supervisor to sign and process her leave slip.

Wade also alleges that supervisor Cynthia Davis, after agreeing to assist her, made it difficult to meet with her, giving Wade a few hours notice of when she was available. When Davis met with Wade on January 6, 2011, she signed the form and told Wade that she would give the original to caseworker Diane Castro for processing and mail or email a copy to Wade.  However, Wade never received a copy from Davis or any indication that Castro processed the leave slip.  According to Wade, Castro intentionally withheld information from the DOL that would have resolved the leave slip dispute.

In an attempt to resolve the dispute and receive her missing FECA payments, Wade wrote letters to manager Ivan Butts on March 3, 2011 and April 5, 2011 asking for his help to ensure that Castro processed the leave slip.  Wade claims Butts responded that the delay was "not done without intent or malice."[9]  On this basis, she includes Butts as a participant in what she calls an "arbitrary group campaign that has been an intentional

---

[8] *See* Compl. No. 11-3795, at 4 (stating that Petty asked Wade why she did not ask her immediate supervisor to sign the form).

[9] *Id.* at 8.

hindrance and obstruction to the processing of [her] Worker's Compensation benefits."[10]

It is unclear from Wade's complaint how many FECA payments she is missing.  She states at one point that she has not received a payment for a two-week period.[11]  The USPS confirms this, stating it discovered one claim for a two-week period that was initially filed under the wrong claim number.[12]  However, Wade later alleges that she only received two and a half payments while she was out of work from mid-November 2010 to April 2011.[13]

Wade claims that this behavior was harassment, created a hostile work environment, and was in retaliation for her prior EEOC activity and for hiring a lawyer to assist her with an injury claim, all in violation of Title VII.

Wade also references a "*Bivens* Claim," the Privacy Act of 1974, federal criminal statutes, and provisions from the Code of Federal Regulations.  These claims fail as a matter of law.


*NRP Complaint*

During the time Wade claims USPS employees were impeding her FECA paperwork, the USPS initiated the NRP for limited duty employees in the facility where she worked.  Through the NRP, employees on limited duty were placed in "standby rooms,"

---

[10] *Id.*

[11] *Id.* at 7.

[12] Def.'s Mem. in Supp. of Mot. to Dismiss or, in the alternative, for Summ. J. 3 n.2.  The USPS claims to have resubmitted the claim under the correct claim number.

[13] Compl. No. 11-3795, at 8.

pending an interview with the NRP panel to determine if a position consistent with the employee's medical restrictions was available within a fifty-mile radius.  According to the USPS, if the search was unsuccessful, employees were given a number of alternatives, including continuing FECA benefits, leave, or retirement.[14]

Wade alleges that while awaiting her NRP interview, she was forced to sit in an uncomfortable standby room for two weeks.  According to Wade, about a dozen employees were assigned to the room on November 4, 2010, which was initially equipped with tables, padded chairs, and a television.  The following day, after a supervisor came into the room and announced, "we've got to change this," the padded chairs were replaced with plastic ones and the tables were removed.[15]  The room was also partitioned, apparently blocking the television.  Wade alleges that one of the maintenance workers who altered the room told a USPS employee in March of 2011 that he was instructed to make the room as uncomfortable as possible.[16]  At this time, Wade and Sharon Jordan-Trowery, both mail handlers, were the only employees remaining in the room.  The other employees assigned to the standby room, all mail clerks, had been placed in temporary work assignments.

Wade also complains of the conditions in the room.  She alleges that the room was uncomfortably cold at times.  The lights were controlled by a motion sensor, resulting in the lights shutting off at times, such as when Wade and another employee fell asleep.  At some point, the room was locked, preventing any employee assigned to the room from

---

[14] Def.'s Mot. to Dismiss 2.

[15] Compl. No. 11-4584, at 4.

[16] *Id.* at 12.

leaving.

According to Wade, when she was the only employee assigned to the standby room on November 7, 2010, co-workers, union stewards and supervisors came to speak with her.  These conversations ended badly, with Wade becoming angry and upset.

Wade states that she was humiliated during her assignment to the standby room, which a union steward equated to a holding cell.  She obtained medication to cope with the stress she felt while in the room.

The NRP panel told Wade on November 17, 2010 that in light of her medical restrictions, there was no work available.  Wade pointed out to the panel that she was working, despite her restrictions, before the USPS assigned her to the standby room.  She also provided the panel with a list of duties that she was able to perform but also informed the panel that she would soon be unable to work due to her scheduled rotator cuff surgery. Wade alleges that the panel rejected her suggestions, telling her that "there is not any job that are [sic] necessary if the person doing them has restrictions; we only want full able bodies."[17]

Wade was sent home.  Yet, she continued to be eligible for, and at least intermittently received, FECA payments.[18]  According to the USPS, Wade received FECA benefits until she was cleared by her doctor to return to her regular job in August 2011.

Wade alleges her treatment in the standby room and during her NRP interview was in retaliation for her EEOC activity and discriminatory based on her disability.  As with her

---

[17] *Id*. at 11.

[18] Compl. No. 11-3795, at 6.

FECA complaint, Wade alleges that the USPS violated several statutes and regulations during the NRP.

## Standards of Review

### *Motion to Dismiss*

The jurisdictional challenge is brought under Fed. R. Civ. P. 12(b)(1).  The motion to dismiss for failure to state a claim is under Rule 12(b)(6). The standards are similar, but not identical.

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Although this standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

A complaint may be dismissed if the plaintiff fails to plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully."  *Id.* Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss.  *Id*. (quoting *Twombly*, 550 U.S. at 557).

In determining whether the complaint meets the sufficiency test under *Iqbal* and *Twombly*, we apply a three-step analysis.  *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212,

221 (3d Cir. 2011).  First, we identify the elements of the plaintiff's cause of action.  *Id.* (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).  Second, we discard conclusory statements, leaving only factual allegations.  *Id.* (quoting *Santiago*, 629 F.3d at 130).  Third, assuming the truth of the well-pleaded factual allegations, we determine whether they plausibly give rise to an entitlement for relief.  *Id.* (quoting *Santiago*, 629 F.3d at 130).

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff.  *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)).  We may also consider documents attached to the complaint.  *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (citation omitted).  Additionally, the *pro se* plaintiff's pleadings must be considered deferentially, affording her the benefit of the doubt where one exists.  *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) (citing *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002)).  With these standards in mind, we shall accept as true the facts as they appear in Wade's complaint and draw all possible inferences from these facts in her favor.

A motion to dismiss under Rule 12(b)(1) attacking the court's jurisdiction is treated similarly to a Rule 12(b)(6) motion.  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000).  However, a jurisdictional motion challenging the factual underpinnings of a court's jurisdiction under Rule 12(b)(1) requires less deference to the plaintiff's complaint.  *CNA v. United States*, 535 F.3d 132, 139 (3d Cir. 2008).  Because a "factual attack" in a Rule 12(b)(1) motion addresses the court's power to hear the case, there is no

presumption of truthfulness and we may consider materials outside the complaint to determine whether the exercise of federal jurisdiction is proper. *Id*. at 139, 145.

The plaintiff has the burden of persuading the court that it has jurisdiction. *Gould*, 220 F.3d at 178. However, consistent with the deferential standard, we shall keep Wade's *pro se* status in mind when we examine the facts relevant to subject matter jurisdiction under Rule 12(b)(1). *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir.1982) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 n. 16 (3d Cir.1977)) (noting that there is a flexible form of the jurisdictional inquiry at the trial court level).

We start with the jurisdictional challenge. If we lack jurisdiction to hear Wade's Title VII claims in her FECA complaint, we do not reach the adequacy of the complaint under *Iqbal* and *Twombly*. If jurisdiction exists, we proceed to an evaluation of the complaint to determine whether Wade has stated a cause of action entitling her to relief.

## FECA Complaint

### *Jurisdiction to Review Title VII Claims*

FECA precludes judicial review of benefits decisions made by the DOL. 5 U.S.C. § 8128(b);[19] *see also Sw. Marine, Inc. v. Gizoni*, 502 U.S. 81, 90 (1991) (FECA contains an "'unambiguous and comprehensive' provision barring any judicial review of the

---

[19] § 8128(b) reads: "The action of the Secretary or his designee in allowing or denying a payment under this subchapter is– (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise."

Secretary of Labor's determination of FECA coverage.").  The USPS relies on § 8128(b) to argue we lack subject matter jurisdiction to review Wade's claim that the USPS harassed her while delaying her FECA paperwork in retaliation for her EEOC activity.  Wade counters that she is not challenging a decision by the DOL because her eligibility for FECA benefits is not at issue.  Instead, she maintains that the USPS is preventing the DOL from making a benefits decision, thereby delaying her benefits in retaliation for her protected activity.

FECA's exclusivity provision does not preclude all Title VII actions.  *Miller v. Bolger*, 802 F.2d 660, 663-64 (3d Cir. 1986).  In *Miller*, the plaintiff-employee alleged that he was repeatedly assaulted at work in retaliation for his testimony on behalf of a co-worker alleging discriminatory employment practices.  *Id.* at 661.  After filing a FECA claim for injuries resulting from one of the assaults, Miller also initiated a Title VII retaliation claim.  *Id.*  The Third Circuit reasoned that FECA's exclusivity provision does not bar a Title VII retaliation claim because the remedies available under Title VII are different than those under FECA.  *Id.* at 665-66.  The Court noted that Congress intended FECA as an alternative to suits for tortious workplace injuries.  In other words, as its legislative history confirms, FECA was intended only as a substitute for statutes like the Federal Tort Claims Act.  *Id.* at 663.  A recovery under Title VII does not constitute "damages . . . for injury" as defined by FECA.  Thus, a Title VII claim may not trigger FECA's jurisdictional bar.  *Id.*

Following *Miller*, several courts have held that the recovery or denial of FECA benefits does not preclude a related suit for injuries stemming from discrimination or retaliation.  *See Nichols v. Frank*, 42 F.3d 503, 515-16 (9th Cir. 1994), *abrogated on other grounds as recognized in Burrell v. Star Nursery, Inc.*, 170 F.3d 951, 955 (9th Cir. 1999);

*Latham v. Brownlee*, No. 03-933, 2005 WL 578149, at *6 (W.D. Tex. Mar. 3, 2005); *Dubee v. Henderson*, 56 F. Supp. 2d 430, 433-34 (D. Vt. 1999); *Karnes v. Runyon*, 912 F. Supp. 280, 285 (S.D. Ohio 1995); *Taylor v. Sec. of Navy*, 852 F. Supp. 343, 351-52 (E.D. Pa. 1994); *Johnson v. Sullivan*, 764 F. Supp. 1053, 1063 (D. Md. 1991); *George v. Frank*, 761 F. Supp. 256, 258-59 (S.D.N.Y. 1991).   As recently observed by one court, "the great weight of authority holds that recovery of FECA benefits does not preclude subsequent claims for discrimination." *Montana v. Donahoe*, No. 10-212, 2011 WL 3862213, *8 (W.D. Tex. Sept. 1, 2011).

Nonetheless, a plaintiff may not avoid FECA's jurisdictional bar by characterizing what is essentially a FECA claim as a Title VII action.  For example, in *Lockett v. Potter*, No. 10-4061, 2007 WL 496361, *1 (N.D. Ohio Feb. 12, 2007), the plaintiff alleged that USPS employees made false statements to the DOL in retaliation for his prior EEOC activity.  The DOL relied on these statements to deny the plaintiff's benefits application. *Id.* at *2.  The court held that Lockett's claim would require it to review the factual and legal basis for the DOL's decision – an inquiry precluded by FECA's jurisdictional bar.  *Id.*; *see also Foulke v. Potter*, No. 10-4061, 2011 WL 127119, at *2-3 (E.D.N.Y. Jan. 10, 2011) (same); *Madison v. Potter*, No. 08-479, 2011 WL 66136, at *4 (N.D. Tex. Jan 10, 2011) (dismissing for lack of jurisdiction plaintiff's claim that the DOL's delay in processing her FECA claim was discriminatory); *Alamguer v. White*, No. 01-1103, 2002 WL 31396123, at *4 (W.D. Tex. Sept. 13, 2002) (dismissing for lack of jurisdiction plaintiff's claim that the DOL conspired with her employer to suspend her FECA benefits in violation of Title VII and the Rehabilitation Act because her claims would require judicial review of the DOL's FECA decision).

Wade is not alleging that she was denied FECA benefits because USPS managers and supervisors misled the DOL.  Instead, she avers that they have prevented the DOL from making factual or legal findings on some of her claims by not sending the DOL the necessary paperwork.  Resolving this issue does not require a review of any benefits determination made by the DOL.  *See Moss v. Potter*, No. 06-1498, 2007 WL 1521210, at *3 (W.D. Pa. May 24, 2007) (holding FECA's exclusivity provision did not divest court of subject matter jurisdiction over plaintiff's Title VII claim that USPS employees withheld medical documentation from the DOL in retaliation for a previous EEOC complaint because plaintiff was challenging and seeking relief from USPS's retaliatory actions), *aff'd on other grounds*, No. 07-2779, 2007 WL 2900551 (3d Cir. Oct. 3, 2007).  Wade's Title VII claim is independent from any determination the DOL ultimately makes.  Her claim does not implicate any factual or legal determinations made by the DOL.

Wade's Title VII claims are not limited to the USPS's alleged failure to forward her completed paperwork to the DOL. She also alleges that USPS employees harassed her while she was trying to obtain the signature necessary to complete her leave slip.  FECA does not bar review of this claim.  Accordingly, we have subject matter jurisdiction to review Wade's Title VII claims.

*Title VII Claims*

Title VII prohibits discrimination based on race, color, religion, gender, or national origin, 42 U.S.C. § 2000e–2(a) (2003), or retaliation for opposing an unlawful employment

13

practice or participating in an enforcement proceeding.  42 U.S.C. § 2000e-3(a) (2003).[20]
The USPS maintains that Wade has failed to allege facts connecting the USPS's
harassment and delay in processing her FECA claims to her EEOC activity.  We agree.

It is unclear whether Wade seeks to proceed under a hostile work environment
theory, a retaliatory harassment claim predicated on a hostile work environment, or a
retaliation claim.[21]  In light of her *pro se* status, we shall analyze her allegations under each
theory, beginning by reviewing the elements.

To state a hostile work environment claim, Wade must show that: (1) she suffered
intentional discrimination because of her race, gender, or national origin;[22] (2) the
discrimination was severe or pervasive; (3) the discrimination detrimentally affected her;
(4) the discrimination would detrimentally affect a reasonable person of the same race,
gender, or national origin in that position; and (5) the existence of respondeat superior
liability.  *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other
grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

In the absence of "direct evidence," Wade must establish her *prima facie* case of
retaliation by showing that: (1) she engaged in a protected activity; (2) the USPS took an

---

[20] "Coverage of Title VII extends to United States Postal Service employees." *Miller*, 802 F.2d at 662 (citing 42 U.S.C. § 2000e-16).

[21] For example, Wade alleges "a good dose of the harassment that I am receiving has a great deal to do with the fact that the Postal Service is retaliating against me for Prior Equal Employment Opportunity activity and hiring a lawyer."  Compl. No. 11-3795, at 9.  She also alleges that her "Postal Service facility continues to behave as if it is ok and legal to treat me adversely, campaign harassment, create a hostile work environment, assault, abuse, experimental torture, force employment termination and impede Federal Employee Compensation Act claims regardless of any past or future judgments made against them."  *Id.*

[22] The Third Circuit has recognized a hostile work environment claim predicated on retaliation.  *Griffin v. Harrisburg Prop. Servs., Inc.*, 421 F. App'x 204, 207 (3d Cir. 2011); *Devore v. Cheney Univ. of Pa.*, No. 11-274, 2012 WL 10322 (E.D. Pa. Jan. 3, 2012).

adverse employment action against her subsequent to the activity; and (3) there was a causal connection between her activity and the USPS's actions.  *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007); *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (citation omitted).  A claim for retaliatory harassment, typically based on the actions of co-workers instead of supervisors, requires that Wade also show there is a basis for employer liability.  *Jensen*, 435 F.3d at 449.

Wade need not establish a *prima facie* case in her complaint.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009).  However, we must examine the factual allegations in light of the elements of each alleged cause of action to determine whether Wade has set forth a plausible claim.  *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citing *Twombly*, 550 U.S. at 570 and *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)).  Under whichever theory she seeks to pursue, Wade must establish a causal connection between her protected activity and the USPS's actions.

Wade does not state a Title VII claim merely by alleging that she believes the actions she challenges were in retaliation for her EEOC activity.  *Sangi v. Warren Hosp.*, No. 10-4571, 2011 WL 4857933, at *2 (D.N.J. Oct. 11, 2011); *Foy v. Wakefern Food Corp.*, No. 09-1683, 2010 WL 147925, at *4 (D.N.J. Jan. 7, 2010); *Lott v. Children's Hosp. of Phila.*, No. 10-4088, 2010 WL 5186167, at *2 (E.D. Pa. Dec. 22, 2010); *Stevenson v. USPS*, No. 04-5971, 2008 WL 108891, at *6 (D.N.J. Jan. 9, 2008).  Although the Third Circuit has noted "that the quantum of facts that a discrimination complaint should contain may bear further development," *Guirguis v. Movers Specialty Servs., Inc.*, 346 F. App'x 774, 776 n.6 (3d Cir. 2009), a plaintiff must include facts in her complaint that support more than a "mere possibility" that the actions taken by the USPS were caused by a retaliatory

animus.  *Iqbal*, 550 U.S. at 557-58.

Wade may support an inference of causation by pleading facts showing: (1) temporal proximity between her EEOC activity and the USPS's impeding her FECA claims; (2) a pattern of antagonism in the intervening period; or (3) that the allegations in their entirety point to some causal relationship.  *Jensen*, 435 F.3d at 450; *see also Burgess-Walls v. Brown*, No. 11-275, 2011 WL 3702458, at *8 (E.D. Pa. Aug. 22, 2011) (dismissing plaintiff's retaliation claim for failing to allege, in the absence of temporal proximity or a pattern of antagonistic behavior, facts connecting her protected activity to the adverse employment actions).

The timing of Wade's 2003 EEOC activity and the USPS's alleged obstruction of her FECA claims seven years later is not suggestive of retaliation.  As she alleges, the USPS began harassing her by refusing to sign and process some of her FECA claims in October 2010.  The passage of approximately seven years, without any intervening adverse employment actions, does not support a reasonable inference that USPS supervisors and managers were harassing Wade in retaliation for her EEOC activity.  *See Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (*per curiam*) (observing that courts finding an inference of causation based solely on temporal proximity require that the timing be "very close" and holding that the passage of twenty months suggested "no causality at all").

Wade also alleges that the USPS retaliated against her for hiring an attorney. Although she does not state in her FECA complaint when and why she hired an attorney, she alleges in her EEOC Complaint No. 1C191000911, which she attached to her complaint in this action, that she hired an attorney in 2009 to "receive treatment and approval by the Department of Labor."  Her attorney was not engaged to represent her in

any Title VII activity.  Although closer in time than her 2003 EEOC activity, hiring an attorney to assist with the processing of a FECA claim is not a protected activity under Title VII.  *Johnston v. Henderson*, 144 F. Supp. 2d 1341, 1354 n.5 (S.D. Fla. 2001).

Wade has alleged no facts showing that there was a pattern of antagonism against her in the period between her 2003 EEOC activity and when the USPS began obstructing the processing of her FECA claims in October 2010.  Without a pattern of antagonism in this intervening period, Wade's allegations that several USPS employees waited seven years before conspiring to engage in a campaign to harass her and obstruct some of her FECA benefits does not state a plausible claim for relief.

Wade's allegations, viewed in their entirety, do not support an inference of causation.  *See Jensen*, 435 F.3d at 450 (observing that in hostile work environment and retaliatory harassment claims, the court should examine the entire scenario to determine if it supports an inference of causation) (citations omitted).  As evidence of the campaign of harassment, she describes several incidents, which we briefly recount.

Wade claims that manager Michael Petty reprimanded a manager who signed Wade's leave slip and tore up the slip in front of Wade.  She also claims that although supervisor Cynthia Davis promised to help process Wade's paperwork, she made it difficult to meet with her.  After Davis eventually met with Wade, she gave Wade's form to caseworker Diane Castro, who Wade claims withheld the information from the DOL.  Wade complained of Castro's lack of assistance in processing her claim to manager Ivan Butts.  According to Wade, Butts wrote in a letter that "[t]his is not done without intent or malice."

To connect these actions to her 2003 EEOC activity, Wade alleges "a good dose of the harassment that I am receiving has a great deal to do with the fact that the Postal

Service is retaliating against me for my prior EEOC activity and hiring a lawyer."  Despite this conclusion, there are no factual allegations in her lengthy complaint to support or infer the conclusion that the USPS was retaliating against her for her 2003 EEOC activity.

The most significant fact Wade alleges is that Butts told her the USPS's delay in processing her FECA claims was "not done without intent or malice."  Viewed with her other allegations, this supports an inference that some USPS employees hold animus toward her.  However, animus, standing alone, is insufficient to state a claim under Title VII.  The animus must be related to the plaintiff's Title VII protected status or conduct. *Moore*, 461 F.3d at 342 ("Many may suffer . . . harassment at work, but if the reason for that harassment is one that is not proscribed by Title VII, it follows that Title VII provides no relief.") (citation omitted); *see also Bradley v. Aria Health*, No. 10-5633, 2011 WL 2411026, at *3 (June 15, 2011) (dismissing plaintiff's complaint because although he pleaded facts supporting an inference of pretext, plaintiff included no facts to support an inference that the pretext was a cover for discrimination).  There are no facts connecting any animus to Wade's 2003 or any other EEOC activity in her complaint.  Consequently, Wade has not stated a plausible claim entitling her to relief.

Wade also mentions that the USPS is trying to "force employment termination." Assuming this is a reference to a constructive discharge claim, the claim fails. "Constructive discharge occurs when an employer knowingly permit[s] conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." *Spencer v. Wal-Mart Stores, Inc.*, 469 F.3d 311, 317 n.4 (3d Cir. 2006) (citations omitted).  The USPS's alleged harassment and delay of some of Wade's FECA claims does not rise to the level of severity required to state a constructive discharge

18

claim.[23]   As with her other retaliation-based claims, Wade has not alleged facts demonstrating a connection between her protected activity and her alleged discharge. Therefore, she has not stated a claim for constructive discharge.

*Additional Claims*

Referring to several other federal statutes and regulations, Wade argues that the USPS's conduct violated federal law.  Wade also mentions a *Bivens* claim, but does not specify what constitutional right the USPS violated.

Title VII precludes Wade's *Bivens* claim.[24]  Title VII is the "exclusive, pre-emptive administrative and judicial scheme for the redress of federal employment discrimination." *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 828-29 (1976).  It "precludes actions against federal officials for alleged constitutional violations as well as actions under other federal legislation." *Francis v. Mineta*, 505 F.3d 266, 271 (3d Cir. 2007) (quoting *Owens v. United States*, 822 F.2d 408, 410 (3d Cir. 1987)); *see also Mitchell v. Chapman*, 343 F.3d 811, 825 (6th Cir. 2003) ("[I]t is well-settled that USPS employees may not allege *Bivens* claims arising out of their employment relationship with the USPS.") (citations omitted); *Rivera-Rosario v. U.S. Dep't of Agric.*, 151 F.3d 34, 38 (1st Cir. 1998) ("The Supreme Court has indicated that where the gravamen of the claim is Title VII discrimination, the only remedy available is under Title VII.") (citing *Brown*, 425 U.S. 820).  Therefore, the *Bivens* claim fails

---

[23] Similarly, Wade's allegations fall short of stating a claim for a hostile work environment because she has not alleged facts indicating severe or pervasive discrimination in retaliation for her EEOC activity.

[24] "A *Bivens* action, which is the federal equivalent of the § 1983 cause of action against state actors, will lie where the [federal] defendant has violated the plaintiff's rights under color of federal law." *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 794 n.3 (3d Cir. 2003) (quotation omitted).

as a matter of law.

Wade also asserts that the USPS "has shown disregard to the Privacy Act of 1974 and amended 5 U.S.C. [§] 8101(6)[25] where they are intentionally refusing to provide the necessary information (submitting CA-7's) to determine whether benefits are being paid properly."[26]   Wade does not identify which provision of the Privacy Act she claims the USPS has violated.  Because this leaves the USPS to examine every potential cause of action under the statutory scheme, Wade has not given the USPS fair notice of her Privacy Act claim.  Therefore, the claim fails to satisfy the pleading requirements of Fed. R. Civ. P. 8.  *See Williams v. Potter*, 384 F. Supp. 2d 730, 734 (D. Del. 2005) (dismissing *pro se* plaintiff's complaint alleging violations of the Privacy Act for failure to meet the requirements of Rule 8 because plaintiff failed to indicate which provision of the Act the defendant violated).

Moreover, the facts Wade alleges do not state a claim under the Privacy Act.  The Act prohibits the disclosure of personal information without consent, 5 U.S.C. § 552a(b), and allows individuals to access their records and correct inaccuracies.  § 552a(d).  Wade alleges that the USPS is withholding information from the DOL.  There is no provision in the Privacy Act that prohibits such conduct.

Citing three criminal statutes, 18 U.S.C. §§ 1001, 1920 and 1922, Wade argues that she is entitled to punitive damages and that some USPS employees should serve jail time. These statutes do not create a private cause of action upon which Wade may sue the

---

[25] Section 8101 provides definitions for Chapter 81 – Compensation for work injuries.  Section 8101(6) defines "widow."  Wade refers to the statute "as amended," but it is unclear to what amendment she refers.

[26] Compl. No. 11-3795, at 10.

USPS.  *Abou-Hussein v. Gates*, No. 08-783, 2010 WL 2574084, at *1 (D.C. Cir. June 11, 2010) (holding 18 U.S.C. § 1001 is a criminal statute that does not create a private cause of action), *cert. denied*, 131 S. Ct. 1055 (2011); *Rogerson v. United States*, No. 08-5060, 2009 WL 1361875, at *1, *5 (D.S.D. May 13, 2009) (holding § 1920 does not create a private cause of action); *see also* 20 C.F.R. § 10.16 ("Enforcement of [18 U.S.C. §§ 1001, 1920, and 1922] that may apply to claims under the FECA is within the jurisdiction of the Department of Justice").

Wade also cites the Program Fraud Civil Remedies Act of 1986, 31 U.S.C. §§ 3801-3812 (2006) ("PFCRA").  The PFCRA allows federal departments and agencies "to pursue administrative actions against individuals for false, fictitious or fraudulent claims for benefits or payments under a federal agency program."  *Orfanos v. Dep't of Health and Human Servs.*, 896 F. Supp. 23, 24-25 (D.D.C. 1995).  The scheme was enacted to "provide federal agencies which are the victims of false, fictitious, and fraudulent claims and statements with an administrative remedy to recompense such agencies for losses resulting from such claims and statements . . . ."  Program Fraud Civil Remedies Act of 1986, Pub. L. No. 99-509, 100 Stat. 1874 § 6102(b); *see also Graham Cnty. Soil and Water Conservation Dist. v. U.S. ex rel. Karen T. Wilson*, 130 S. Ct. 1396, 1409 n.17 (2010) (observing that the PFCRA is "addressed to federal administrative remedies").  It does not provide relief to individuals.  Hence, Wade cannot rely on the PFCRA to recover against the USPS.

Wade mentions several provisions in the Code of Federal Regulations.  20 C.F.R. §10.16 lists 18 U.S.C. §§ 1001, 1920, and 1922.  Like the cited criminal provisions, the regulation does not provide a private cause of action.  Instead, it expressly states that the

21

Department of Justice has jurisdiction to enforce those statutes.  20 C.F.R. § 10.16.

20 C.F.R. § 10.111, also cited by Wade, is a FECA-implementing regulation. *Schmidt v. Shah*, 696 F. Supp. 2d 44, 65 (D.D.C. 2010).  FECA "does not provide a cause of action against a government employer who fails to comply with these regulations."  *Id.* Similarly, 29 C.F.R. § 22.1, *et seq*. are implementing regulations for the PFCRA. Therefore, neither the PFCRA nor its implementing regulations provide a private cause of action under the facts Wade alleges in her complaint.

## National Reassessment Program Complaint

### *Title VII Claims*

Wade claims that her treatment during the NRP was in retaliation for her EEOC activity.  As with the Title VII claims in her FECA complaint, Wade has not pleaded facts indicating a causal relationship between her 2003 EEOC activity and her experience in the NRP in late 2010.  There is no temporal proximity.  Wade has not alleged a pattern of antagonism in the seven years following her EEOC activity that could provide a causal link. Nor do her factual allegations, viewed in their entirety, support an inference of a causal relationship.

During the time she claims USPS employees were interfering with the processing of her FECA paperwork, Wade was assigned to a standby room as part of the USPS's NRP.  Wade alleges that for two weeks, she was forced to sit in the room to await her NRP interview.  According to Wade, the USPS intentionally made the room uncomfortable by replacing padded chairs with plastic ones, removing tables, partitioning the room, blocking access to a television, locking the room for a period of time, making the room cold, and

controlling the lights in the room with a motion sensor.  Wade states that she was humiliated and stressed during her assignment to the standby room, requiring her to seek medication.

When a supervisor or manager came to the standby room to talk to Wade, the conversations ended badly, resulting in her becoming angry and sometimes crying.  For example, Wade recounts a conversation with manager Tommy Franklin when he came to the standby room to explain the NRP process to Wade.  The conversation ended with Wade feeling "rage and shock" and telling Franklin that he was not on her side because he had not written a letter of recommendation as he had agreed.[27]

According to Wade, her NRP interview did not go any better.  The panel found that that there was no work available that could accommodate her medical restrictions.  After some frustrating interactions with the panel members, Wade was sent home.

To link her experience during the NRP process to her protected activity, Wade claims that she is viewed as a trouble-maker for her past EEOC activity.[28]  Wade "believe[s] that the managers had knowledge of [her] prior legal activity against the post office and that [she is] treated differently than other employees and was retaliated against because of it."[29]

Like she did with her other claims, Wade makes bald conclusory assertions without any factual allegations.  Her assertions, based on her belief and not facts, do not support an inference of retaliatory animus.  It appears that but for one day of her time in the

---

[27] Compl. No. 11-4584, at 7-8.

[28] *Id*. at 14.

[29] *Id*.

standby room, she was joined by other mail handlers.[30]  There are no facts supporting her allegation that she was singled out during the NRP process.  Although other employees assigned to the room were often placed on temporary work assignments, these employees were not mail handlers.

To support an inference of causation, Wade references three other employees she claims were similarly situated.  She alleges that one employee continued to do the same limited duty job as Wade had done before her assignment to the standby room, but this employee was not required to sit in the standby room before being sent home on November 18, 2010.  Wade also points to two USPS employees working in a different facility who were "treated more favorably during the NRP process as comparison with the standby room standards."[31]  However, there are no allegations that could demonstrate that these employees were similarly situated to Wade.  Therefore, her comparator allegations are insufficient to show a causal nexus.

Wade's allegation that someone at the USPS ordered the standby room to be made as uncomfortable as possible is troubling.  However, the presence of other limited duty employees assigned to the stand-by room weighs against an inference of retaliation against Wade.  Moreover, the alleged statements by the NRP panel that in light of Wade's scheduled surgery, they only wanted "full able bodies"[32] relates to Wade's abilities at the time and is not suggestive of retaliation.

---

[30]  *See, e.g.*, *id.* at 10 ("There were the usual two or three of us mail-handlers Sharon Watkins, Sharon Jordan-Trowery, and myself in the room.").

[31]  Pl.'s Mot. 2.

[32]  Compl. No. 11-4584, at 11.

Wade's two complaints, viewed together, do not support an inference of causation. In the absence of facts connecting Wade's EEOC activity to her treatment during the NRP, we shall dismiss Wade's Title VII claims.

*Disability Discrimination*

Wade also alleges that through the NRP process, the USPS discriminated against her based on her disability, in violation of the ADA and Rehabilitation Act.  The EEOC held Wade's disability discrimination claims in abeyance because they fall within the "*McConnell* Class*,*" a class action pending before the EEOC.  As stated in the EEOC's final agency decision for Wade's claims, which she attached to her NRP complaint, the *McConnell* Class alleges that the USPS discriminated against disabled employees through the NRP because it failed to engage in an interactive process and did not accommodate class members' disabilities.[33]

Congress has granted the EEOC authority to establish procedures for adjudicating discrimination claims.  *See* 42 U.S.C. § 2000e-16(b) (2003) ("[T]he [EEOC] . . . shall issue such rules, regulations, orders and instructions as it deems necessary and appropriate to carry out its responsibilities under this section.").  Pursuant to this authority, the EEOC has promulgated regulations for class actions.  *See generally* 29 C.F.R. §1614.204; E.E.O.C. Management Directive 110, Chapter 8, Nov. 9, 1999.  When a class action is pending, the EEOC subsumes individual complaints into a class action alleging similar claims.

---

[33] EEOC Decision No. 1C-191-0023-11, at 2 n.1 (Feb. 15, 2011).

Management Directive 110, Chapter 8, Part III.C.;[34] *Mack v. Gonzales*, No. 06-350, 2007 WL 196791, at *2 (D. Colo. Jan. 23, 2007) (holding the EEOC has the authority to subsume individual complaints within a related class action).  Subsumed claimants may not opt out of class membership.  Management Directive 110, Chapter 8, Part V.C. ("[C]lass members may not 'opt-out' of the defined class.");[35] *see also id.* at Part X.C. (same).

There is no contention or suggestion that the EEOC erred in holding Wade's disability discrimination claims in abeyance pending adjudication of the *McConnell* Class. In fact, Wade told the Court during the Rule 16 conference that she had reached out to class counsel to participate in the class.  We agree that Wade's disability discrimination claims were properly subsumed into the *McConnell* class and placed in abeyance pending resolution of the class claims.  *Johnson v. Rubin*, 105 F.3d 665 (Table), 1997 WL 14348, at *2-3 (9th Cir. 1997) (holding the EEOC properly placed individual claims subsumed in an EEOC class action in abeyance pending resolution of the class action).

Wade, a member of the *McConnell* Class, will not be permitted to individually litigate her claims in this forum while the class action is ongoing before the EEOC.  Allowing a member of an EEOC class action to pursue individual claims in federal court would essentially permit class members to opt out of the class in contravention of the procedures

---

[34] The relevant portion of the provision reads: "An individual complaint that is filed before or after the class complaint is filed and that comes within the definition of the class claim(s), will not be dismissed but will be subsumed within the class complaint.  If the class complaint is dismissed at the certification stage, the individual complaint may still proceed, unless the same or another basis for dismissal applies. . . ."

[35] The regulation continues: "[H]owever, [class members] do not have to participate in the class or file a claim for individual relief.  All class members will have the opportunity to object to any proposed settlement and to file claims for individual relief if discrimination is found."

promulgated by the EEOC at Congress's behest.  *Cf. Wetzel v. Liberty Mut. Ins. Co.*, 508 F.2d 239, 252-53 (3d Cir. 1975) (allowing members of a binding class action to opt out and individually litigate their claims "would defeat the fundamental objective of [Rule 23](b)(2), to bind the members of the class with one conclusive adjudication").  Moreover, individual adjudication of her claims could interfere with the administration of the class action and risks inconsistent results.  Based on these concerns, dismissal without prejudice of Wade's subsumed claims is appropriate.  *See Horns v. Whalen*, No. 90-6068, 1991 WL 78, at *1 (4th Cir. Jan. 2, 1991) ("This Circuit as well as several other courts of appeals and district courts have held that it is not an abuse of discretion for a court to decline jurisdiction over an issue pending in another court, particularly in the instance of a class action.").

We note that the EEOC procedures subsuming individual claims into a related pending class action do not have the protections incorporated in Rule 23(b).  *See, e.g.*, *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998) (discussing the importance in ensuring that significant individual issues do not pervade the entire action in a binding Rule 23(b)(2) class action).  However, unlike binding class actions under Rule 23(b)(1) and (2), Wade may later pursue her individual claims even if class-wide discrimination is not found.  29 C.F.R. § 1614.204(l)(2).  If class-wide discrimination is found, Wade may present her claim at the remedy stage.  Management Directive 110, Ch. 8, Part III.C.  At that point, Wade will have the benefit of a presumption that she was the victim of discrimination.  29 C.F.R. § 1614.204(l)(3).  If the USPS contests her individual claim, it would have to prove by clear and convincing evidence that she is not entitled to relief.  *Id.*  These protections further support our dismissal, without prejudice, of Wade's subsumed disability discrimination claims.

27

*Additional Claims*

As in her FECA complaint, Wade cites several statutes and regulations to argue that the NRP violated federal law.  We shall dismiss these additional claims.

Wade claims that she was not paid properly "according to Title 5 United States Code and Fair Labor Standards Act section 551.431."  She does not refer to any specific provision in Title 5.  Therefore, her Title 5 claim is dismissed because it does not give the USPS fair notice of the claim and the grounds on which it rests.  *Erickson v. Pardus*, 551 U.S. 89, 93, (2007) (quoting *Twombly*, 550 U.S. at 555).

We shall also dismiss Wade's Fair Labor Standards Act claim.  We assume Wade's reference to "section 551.431" is to 5 C.F.R. § 551.431, the regulation promulgated by the Office of Personnel Management to implement the Fair Labor Standards Act.   The regulation distinguishes between standby and on-call employees.  *Id.*  Stand-by employees are entitled to compensation, on-call employees are not.  *Id.*; *U.S. Dept. of Navy v. FLRA*, 962 F.2d 1066, 1068 (D.C. Cir. 1992).  Wade does not allege that the USPS labeled her an on-call employee in an attempt to avoid paying her for her time in the standby room.  In fact, she was compensated for her time in the stand-by room.  Therefore, she does not state a claim under the Fair Labor Standards Act.

Wade cites 5 C.F.R. §§ 353.301(d) and 353(d)[36] and 29 C.F.R. §§ 1614.103(a)(b)(3) and 1614.203.  Wade argues that these regulations support her assertion that the USPS

---

[36] There is no 5 C.F.R. § 353(d), however, Wade quotes language approximating that of § 353.301(d).

discriminated against her based on her disability.[37]   Because these claims fall within the *McConnell* Class, they will be dismissed without prejudice.

Wade also references two provisions of the "Employee Labor Manual."  What source Wade is referring to is unclear.  Assuming it is a USPS manual, it does not provide a cause of action.

### Punitive Damages against the USPS under Title VII

In both complaints, Wade seeks punitive damages.   We agree with the USPS that Wade may not seek punitive damages under Title VII.[38]  Title VII's exemption of punitive damages to government agencies applies to the USPS.  *Robinson v. Runyon*, 149 F.3d 507, 517 (6th Cir. 1998); *Baker v. Runyon*, 114 F.3d 668, 670-72 (7th Cir. 1997); *Jeffries v. Potter*, No 06-707, 2008 WL 2607856, at *3 (D. Del. July 1, 2008) (order granting partial motion to dismiss).  Therefore, Wade may not recover punitive damages.

### Conclusion

Wade's *Bivens* claim, her Fair Labor Standards Act claim, her claims under the PFCRA, 18 U.S.C. §§ 1001, 1920, and 1922, and 20 C.F.R. §§ 10.16 and 10.111 shall be dismissed with prejudice.   Her ADA, Rehabilitation Act, and any related disability discrimination claims are dismissed without prejudice to her right to pursue them as a class member in the on-going class action before the EEOC.

---

[37] For instance, Wade alleges the USPS violated Section 353.301(d) because it did not engage in an interactive process to accommodate Wade's restrictions.

[38] We have already concluded that the provisions that Wade cites providing for criminal fines do not give her a private cause of action.

Wade's Title VII claims are dismissed without prejudice.  She may amend her complaint with respect to those claims only.